34 591,
120 610

## WALKER'S HEIRS *vs.* MURPHY.

[REAL ACTION BY HEIRS-AT-LAW AGAINST PURCHASER FROM EXECUTOR.]

1. *Executor's power under will to sell realty.*—Where a testator directed that his entire estate, after the payment of his debts, should be kept together " for the support, maintenance and education" of his children ; that no account or charge should be made against any of them for necessary support and education ; that when either of his daughters became of age or married, she should have one-sixth part of the estate " converted into slaves, and settled upon her, to her sole and separate use ;" and that as his sons severally became of age, their portions of the estate should " be paid to them in cash,"—*held*, that the executor had no power under the will to sell the entire real estate at private sale, although two of the children were in a condition at the same time to demand the payment of their respective shares.

2. *Estoppel en pais.*—The receipt by the heirs-at-law and devisees of their respective portions of the purchase-money, arising from an unauthorized sale of land by the executor, does not estop them from recovering the land in an action at law : if available at all as an estoppel, it is only in equity.

APPEAL from the Circuit Court of Franklin.

Tried before the Hon. ANDREW B. MOORE.

THIS action was brought by the children, heirs-at-law and devisees of Peter Walker, deceased, against Mrs. Maria Murphy, to recover a tract of land in said county, of which said Peter Walker was seized and possessed at the time of his death, and to which the defendant derived title under a purchase at private sale from the executors of said Walker. The defendant pleaded not guilty, in short by consent, with leave to give any special matter in evidence which might constitute a good defense to the action. The facts of the case, as admitted by agreement on the trial, are thus stated in the bill of exceptions :

" Peter Walker, the plaintiffs' ancestor, lived and died in said county of Franklin, leaving at his death six children, two sons, and four daughters. The last will and testament of said Walker, which was duly admitted to probate in said county on the 5th August, 1844, is in the following words," &c. (See the material clauses of the will

quoted in the opinion of the court.) "Letters testamentary, on the probate of said will, were duly granted by the proper court of said county, to Clark T. Barton and Jeremiah Helmes, the executors therein named, who took on themselves the administration and execution of the duties incident to said will, and gave bond with surety as required by law. Sallie Walker, one of the testator's daughters, was of age at the time of his death; and another daughter intermarried with Thomas B. Mattingley on the 20th January, 1846. The premises sued for, of which said testator held the legal title at the time of his death, constituted his plantation, and were in cultivation by him at the time of making his will, and at his death, though he never lived on said lands. On the 6th January, 1847, the executors of said Walker sold and conveyed said lands, at private sale, on a credit of one and two years, to George W. Carroll, executor of Garret Murphy, deceased, as shown by the deed hereunto annexed. The defendant derives title to the lands sued for under said deed, by proper conveyances, and has had possession ever since said sale. The·purchase-money, or proceeds of said sale, when realized by said executors, went into said Walker's estate, and were distributed on their settlement with the court in the year 1847. Two witnesses stated, that they regarded the price obtained for said land by the executors as its full value at the date of the sale; and the annual rent of the place is worth one hundred and fifty dollars. On one of the annual settlements, the estate was indebted to said executors, before said sale of land, in the sum of six hundred dollars. The testator's six children were all alive at the date of said sale, and long afterwards. Plaintiffs are the only legatees and heirs-at-law of said testator now living, and have received the proceeds of said sale of lands in distribution under said will. The administration of said estate was fully settled up by said executors before this suit was brought. The testator's youngest child was twenty-one years of age in the year 1852, and there was about two years difference between the ages of that and the next youngest, and so of the second from the youngest. Said testator left no widow.

At the time of his death, he owned slaves to the value of about $4500, real estate valued at $7,000, other personal property about $2,000, and notes and accounts, with interest, amounting to about $10,000; and owed about $10,000. The probate of his will, the letters testamentary to his executors, their bond, final settlement, and the distributees' receipts for their respective portions of the estate, as shown by the records of the probate court, were also in evidence.

"On these facts, the court charged the jury, 'that if they believed the evidence, they might find a verdict for the defendant.' The plaintiffs excepted to this charge, and requested the court to instruct the jury, in writing, '1st, that if they believed the evidence, they might find a verdict for the plaintiffs;' '2d, that the will of Peter Walker did not confer on his executors the power to sell the lands in controversy;' '3d, that said will did not give the executors the power to sell said lands until the education of the testator's children was completed;' '4th, that said will did not give the executors power to sell said land at private sale, on a credit, and at the time, and under the circumstances shown in evidence;' and, '5th, that the executors' deed to Carroll, under the circumstances in proof, did not divest the plaintiffs' title to the lands, nor vest the legal title in said Carroll.' Each of these charges was refused by the court, and the plaintiffs excepted."

The errors assigned are, the charge given by the court, and the refusal of the several charges asked.

D. P. LEWIS, for appellant.

WM. COOPER, contra.

A. J. WALKER, C. J.—The executors of Peter Walker, deceased, sold the land in controversy without the authority of any court, at private sale. The sale was necessarily void, unless the will of their testator bestowed upon the executors the power to sell. The two clauses of the will bearing on the question of the power of sale are as follows : "It is my will, after paying my funeral expenses and my just debts, that my estate be kept together, for

the support, maintenance and education of my children, and that no account or charge be made against any of them for necessary support and education." "I further desire, that whenever either of my (children) daughters marry or become of age, that the one-sixth part of my estate be converted into slaves, and settled upon her, to her sole and separate use, free from any disposing power of her husband; and that as my sons severally become of age, that their portions of my estate be paid to them in cash."

Now, it is manifest that there is here, not only no grant of a power to sell the *entire* estate, but a virtual denial of such power. The testator directs that his estate be kept together, for the support, maintenance and education of his children, and that no charge be made against any of them for necessary support and education. The testator's design to keep the estate together, as the means of maintaining and educating the children, and not to have it sold, is clearly manifested in this item of the will. The next item rather confirms than conflicts with that idea. It requires that one-sixth part of the estate should be converted into slaves, upon the marriage or attainment of majority by any one of the testator's daughters; and on the attainment of majority by the sons, that their respective portions should be paid in cash. The intention of this item of the will is too clear to be mistaken. Following up the design evidenced by the preceding clause, he intended that the estate should be kept together, until the contingencies should arise in which his several daughters and sons should be entitled to their several and respective portions of one-sixth; and that in each one of those several contingencies, one-sixth part of the estate should be set apart from the rest, and converted either into slaves or money, according as the daughters or sons were to receive portions. There could be from this clause no implied power to sell any other than one-sixth part of the estate as the contingencies arose; and that would be a sixth part previously separated and distinguished for that purpose. If two of the children were at the same time in a condition to demand the payment of their shares,

there could be no authority for the sale of more than two sixths of the estate.

The authorities cited and referred to by the counsel for the appellee do not justify any implication of authority to sell the entire estate upon the occurrence of any one or two of the contingencies. It is clear that such a sale would defeat the testator's manifest intent and purpose. This will be plain, if the inquiry be made, how could the estate be kept together, for the support, maintenance and education of the children, if upon the first marriage or attainment of majority the entire estate should be sold. It may have been more convenient and expedient to sell the entire estate, than to have sold a sufficiency to pay the several portions of the children, as they became respectively entitled to them. That might have been a ground for an application to the chancery court, not for a private sale by the executors. It would be a violation of the intention of the testator for the executor to make any sale except of a portion set apart and distinguished to meet the claims of the children, as the contingencies upon which their right to the possession of their shares accrued.

The decision in Winston v. James & Haigh, 6 Ala. 550, asserts the doctrine, that "no precise forms of words is necessary to the creation of a power (of sale). If the intention to confer the power is apparent, to enable the executor to execute the trusts of the will, the power will be implied." Neither that case, which is upon a will of widely different language, nor the principle above extracted, can avail the appellee; for the exercise of the power of sale here would defeat, instead of enabling the executor to execute the trusts of the will.

[2.] A parol estoppel never operates a transfer of the legal title to land. If there was an estoppel in this case, by the receipt of their respective shares of the purchase-money of the land by the children, it is available only in equity.—McPherson v. Walters, 16 Ala. 714; Smith v. Munday, 18 Ala. 182; Day v. Rowland, 17 Ala. 681.

The judgment of the court below is reversed, and the cause remanded.