# Mexican Asphalt Company, Omar D. Hall, and James Pease, Sheriff, v. The Mexican Asphalt Paving Company.

1. INJUNCTION—*Party Pursuing His Legal Rights.*—A party pursuing his legal rights, in a legal manner, can not be enjoined on the ground that he is pursuing them from malicious motives.

2. SAME—*Restraining a Suit in Replevin.*—Equity will not interfere by way of an injunction to restrain the taking of property by a writ of replevin, where it is not made to appear by the bill that there is any defense which may not as well be asserted in the suit at law as in chancery.

3. APPEAL—*From an Interlocutory Order Granting an Injunction After a Motion to Dissolve, etc.*—A party does not lose his right to take an appeal from an interlocutory order granting an injunction, because his motion to dissolve the injunction and demurrer to the bill have both been overruled.

**Injunction.**—Appeal from the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Heard in this court at the October term, 1895. Reversed. Opinion filed December 30, 1895.

DOOLITTLE, TOLMAN & POLLASKY, attorneys for appellants, contended that where a full defense to the action at law may be made in the trial of the suit at law, application for an injunction will be denied regardless of whether the demands which are sought to be enforced are well or ill founded, and that question will not be considered upon an application for an injunction if the parties aggrieved can be fully heard in defense of the action at law. 10 Am. and Eng. Ency. of Law, 884 *et seq.*, and cases cited in note 4, and 792 and 793, and cases in notes; 1 High on Injunctions, Chap. 2, Par. 89 to 93, and 50; Hamilton v. Stewart, 59 Ill. 330; Winchester v. Grosvenor, 48 Ill. 517; Clark v. Clapp, 14 Rhode Island, 248; Evans v. Taylor, 28 W. Va. 184; Wolf River Lumber Co. v. Brown, 88 Wis. 638; White v. Semper, 1 Ohio Dec. 451.

The motive of the plaintiff in prosecuting an action at law will not be considered. Neither at law nor in equity

will a person be prevented from doing a thing which he has a right to do on the ground that his motives for pursuing that right are improper. M. P. Railway Co. v. Flannigan, 47 Ill. App. 322.

Irreparable injury must be shown by pleading facts from which the injury arises—not by simply alleging irreparable injury, and an injunction will not be granted upon an allegation of theoretical, contingent, possible or conjectural injuries; the injury must be shown to be certain and substantial. Blatchford v. C. D. & D. Co., 22 Ill. App. 376; Campbell v. Powers, 139 Ill. 128; I. C. R. R. v. City of Chicago, 138 Ill. 453; White v. Semper, 1 Ohio Dec. 451.

The statute gives the right to a writ of replevin, upon filing a bond in double the amount in controversy, and it is presumed that such bond affords ample indemnity for the execution of the writ. A resort to the remedy of replevin is an "undoubted right" and will not be denied even to an insolvent. Hamilton v. Stewart, 59 Ill. 330; White v. Semper, 1 Ohio Dec. 451; Winchester v. Grosvenor, 48 Ill. 517; Brown's Appeal, 66 Pa. St. 155.

PRENTISS, HALL & GREGG, attorneys for appellee, contended that the granting or the withholding of an interlocutory injunction is a matter resting in the sound discretion of the court, to be exercised according to the circumstances of each particular case. 1 High on Inj., Secs. 11, 15; 1 Beach on Inj., Secs. 117, 118.

Courts will not interfere unless there has been an abuse of discretion. Unless, therefore, some established rule of law or principle of equity has been violated, the action of the court below will not be interfered with upon such appeal. 2 High on Inj., Secs. 1696–1697; 2 Beach on Inj., Secs. 1410; 1 Beach on Inj., Sec. 381.

Upon an appeal from an order granting an interlocutory injunction upon a bill duly verified, where such appeal is allowed, the allegations of the bill are to be taken as *prima facie* true. 2 High on Inj., Sec. 1697.

To deprive a plaintiff of the aid of equity by injunction

it must appear that the remedy at law is plain and adequate; in other words, that it is practical and efficient to secure the ends of justice and its proper and prompt administration, as is the remedy in equity. Unless this is shown, a court of equity may lend its extraordinary aid by injunction, notwithstanding the existence of a remedy at law. 1 High, Sec. 30; 1 Pomeroy, Equity Jur., Sec. 180.

If the title to the plaintiff is in dispute injunction will not be granted previous to the determination of the legal rights of the party, unless the act about to be committed by defendant is of such a nature that should the right to commit it be decided against him the consequences of the commission would be irreparable. 10 Am. & Eng. Ency., 880.

In ordinary controversies concerning legal ownership or possession of chattels, the common law actions of replevin and trover furnish a complete remedy. But in cases where such a property has a certain, special, extraordinary and unique value impossible to be compensated for by damages, etc., equity has concurrent jurisdiction. 1 Pomeroy's Equity Jur., Sec. 177; 2 Beach on Inj., Sec. 739, and notes.

Where the title to the property is in dispute, the question whether the defendants are insolvent and able to respond in damages, forms an important element in passing upon an application for an injunction pending the litigation. 10 Am. & Eng. Ency. 883, and cases there cited.

The granting of the injunction will not prevent the trial of the right of property in the replevin suit. It will proceed as before. 1 High on Inj., Sec. 14; Mayor v. Magnon, 4 Mar. (La.), 2; Dehr v. Lampton, 31 Ia. 172; Cobbey on Replevin, Sec. 1213.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This is an appeal from an interlocutory order granting an injunction.

As showing the scope of the injunction, for which, however, no order appears ever to have been entered, except in so far as an indorsement by the judge of the Superior Court

on the back of the bill directing a writ of injunction to issue as prayed, may be construed as an order of record for an injunction, we copy the ordering part of the writ that was issued restraining the defendants, appellants here, Omar D. Hall, the Mexican Asphalt Company, and James Pease, sheriff of Cook county, as follows :

"From taking possession of certain or any asphalt now in possession of the Mexican Asphalt Paving Company, complainant in said bill, or which is now in bond, as in said bill alleged, and from removing same or any part thereof from the possession of said complainant or from the State of Illinois or beyond the jurisdiction of this court, or in any way interfering with the possession of said Mexican Asphalt Paving Company of said asphalt, at the instance or request of any or either of said parties defendant, or in any way, shape or manner, injuring the business of said Mexican Asphalt Paving Company."

The appellant, the sheriff of Cook county, was the only defendant upon whom the writ was served. In the writ there is no allusion to any process in his hands to which the restraining order, as against him, has application.

We will not comment upon the condition the sheriff might find himself in before a court jealous of the respect due to its orders, if a writ of execution should come to his hands, the levying of which might, in some "way, shape or manner," injure the business of the complainant; but make note of the fact as illustrative of the reckless practice prevailing in this county concerning injunctions, against which a corrective should be applied.

A motion to dissolve the injunction on the face of the bill was made, argued and overruled. Afterward a demurrer to the bill was filed and overruled, and thereupon this appeal from the order granting the injunction was allowed.

It is urged that this appeal should be dismissed because of the appellants having chosen in the first instance to move to dissolve, and then to demur, and having failed therein it was too late to appeal from the injunction order. We think not. It was a commendable practice to do as was

done, in order that the court below might be fully informed concerning the bill and injunction order. The injunction, motions, demurrer and orders thereon, were all at the same term and within about ten days from the filing of the bill.

Counsel for appellee, in their brief, state the case made by their bill as follows :

" The substance of the facts as shown by the bill are that complainant was under a contract with the city of Chicago to pave and curb a certain portion of Wabash avenue in said city with asphalt, in a manner and within a time therein provided, and had given a bond in the sum of $28,000 for the faithful performance of its contract; that the work was partly completed, and a large force of men with teams, machinery, etc., were then engaged in the work at large expense to complainant; that in order to complete said contract it was necessary for complainant to send its president to the Republic of Mexico to get the asphalt necessary to complete the work according to the contract; that in August last its said president went to Mexico for that purpose and there purchased the necessary asphalt to complete said work, and at a great labor, trouble and expense had it removed from the natural deposits, transported to the sea coast, and thence by steamship transported to the city of Baltimore, and thence by railroad to the city of Chicago, where it had just arrived. The bill states that said asphalt was the sole property of complainant and that no other person or persons whatsoever had any title to or interest in said asphalt, or any right to the possession of the same or any part thereof except complainant. It also states that it had on hand, in Chicago, other asphalt theretofore shipped there, of which it was the sole owner and had the sole right to possession. The bill alleges that the said asphalt was absolutely necessary to the completion of said contract, and that no other of the kind or quality required by said contract could be obtained in time for the completion of the contract according to its terms, and that if said asphalt was taken from its possession it would thereby be prevented

from fulfilling its said contract, and that it would lose the benefit of it, be liable for the penalty of the bond, $28,000, and would be otherwise greatly damaged, and would also be greatly injured in its business standing and reputation, the amount of which it would be impossible to accurately estimate, but not less than $100,000, and thereby would suffer great and irreparable injury.

The bill further alleged that the defendants, Hall and the Mexican Asphalt Company, with others, to the complainant unknown, had theretofore entered into a conspiracy to injure the complainant and ruin its business, and to prevent it from completing its said contract with the city of Chicago according to its terms; that in furtherance of such conspiracy they had tried to prevent complainant from obtaining said asphalt in Mexico, tried to foment a strike among its workmen, hired some of them to leave its employ, raised the price of boxes, barrels, etc., necessary for the shipping of the asphalt, got an ' embargo' to prevent the shipping of the asphalt, and by divers ways and means, harassed, annoyed and interfered with complainant, and caused it great trouble and expense in its efforts to ship said asphalt from Mexico; that when said asphalt arrived at Baltimore, the said defendants, though having no interest in said asphalt or right to the possession of the same, in furtherance of said conspiracy, undertook to replevin the same, and partly succeeded, and had the same shipped to the city of Philadelphia, Pennsylvania, but that finally complainant, at great trouble and expense, was able to have the same brought on to Chicago, and that it was about to be turned over to complainant by the United States custom officials in whose hands it then was; that said defendants, Hall and the Mexican Asphalt Company, in the furtherance of said conspiracy, were about wrongfully to replevin the said asphalt so shipped, together with other asphalt then in complainant's possession, and owned by it, and theretofore shipped; that for that purpose they had begun a suit in replevin in the Circuit Court of Cook County, and gotten out a writ of replevin for the said asphalt, which said writ was then in the hands of

James Pease, the sheriff, who was about to take possession of the same under said writ, and would do so immediately and turn the same over to said other defendants, who would at once ship the same out of this State and beyond the jurisdiction of the court, and wholly deprive the complainant of the same, unless prevented. The bill further alleges positively that defendants, Hall and Mexican Asphalt Company were non-residents and had no property whatever in this State, and that, upon information and belief, they were wholly insolvent. That the replevin bond was only $8,000, and wholly insufficient and inadequate to protect complainant."

The question, narrowed down, may be said to be simply this: May equity interfere by way of injunction to restrain the taking of property by a replevin writ, under the facts alleged? The irreparable injury that it is claimed will result if this may not be done, consists in the alleged fact that said asphalt was absolutely necessary to the completion of appellee's contract with the city of Chicago, and that no other asphalt of the kind or quality required by said contract could be obtained in time for the completion of said contract according to its terms, and that if the asphalt should be taken from the possession of appellee, it would be thereby prevented from fulfilling said contract, and would lose the benefit of the contract, and be liable for the penalty of the $28,000 bond it had given to secure performance of the contract.

The bill nowhere states the time within which the alleged contract with the city must be completed in order that appellee shall avoid liability upon its bond, nor are the terms of the bond anywhere shown. For anything that is shown by the record, appellee may have an abundance of time to procure other asphalt of the kind required long before the time for completion of the contract will expire.

An allegation that if appellee shall be deprived of the particular asphalt in question, no other asphalt of the required kind can be obtained in time for the contract to be completed according to its terms, unsupported by an allega-

tion of what the terms of the contract are in that regard, is a mere conclusion of the pleader.    So, also, the allegations concerning appellee's liability upon its said bond for $28,000, without any averment of what the terms of the bond are, are equally insufficient.    Campbell v. Powers, 139 Ill. 128, states, instructively, what are essential allegations in a bill in equity of this character.

But, omitting further reference to the form of the bill, and assuming that it states with sufficiency the several matters relied upon, is a case for relief by injunction made out?

The bringing of a replevin suit by the appellants was their legal right under the statute.    Much stress is laid upon the alleged fact that the replevin suit was harassing, annoying and injurious to the appellee, that it was prosecuted for insufficient and malicious motives, and that the taking of the asphalt by the replevin writ would irreparably cripple and injure appellee in its said work.

That is saying no more than might flow from the prosecution of almost any replevin suit.    The circumstance that a defendant would be injured, and irreparably so, with reference to the use of the particular chattel claimed by the plaintiff in the replevin suit, if the plaintiff should be permitted to take the disputed chattel away from the defendant, is one that might, with considerable plausibility and reason, be argued in most cases of replevin.    But the statute has conferred upon a claimant of chattels the right to seize them in replevin and to substitute a bond for them, and we do not see how the exercise of that statutory right can be urged as a ground for equitable interference, even though it be done with improper motives, unless, at least, it be shown that for some reason an adequate defense at law can not be made, or that some equitable defense, not cognizable at law, exists to the action.

As said in Mo. Pac. Ry. Co. v. Flannigan, 47 Ill. App. 322, " A party pursuing his legal rights, in a legal manner, can not be called in question in respect to the motives which prompt him to action; " and in Clark v. Clapp, 14 R. I. 248, it was said, " A person can not be enjoined from pur-

suing his legal rights because he is pursuing them from malicious motives."

We can not see that the fact that the asphalt in question was a Mexican product, not immediately obtainable, and possessing qualities needed for the work in which appellee was engaged, alters the remedy from law or equity, even if it be conceded that equity would have concurrent jurisdiction in cases of chattels, which possess an extraordinary and unique value, impossible to be compensated for by damages. 1 Pomeroy Eq. Juris., Sec. 177.

In Young's Executor v. Young, 9 Ben. Monroe, 66, a sale of slaves which were alleged to be family servants peculiarly endeared to the widow and children of the testator, and possessing to them a value far above their vendible price, and that the title to them was in such condition that a sale and purchase of them by strangers could only be made at a great sacrifice and would irreparably injure the said widow and children and testator's executor, an injunction against their sale under execution was refused.   See also, Comby v. McMichael, 19 Ala. 747; McCullough v. Walker, 20 Ala. 389.

The bill, as stated, alleged that the appellee bought the asphalt in Mexico, and that it " was the sole property of the complainant, and that no other person or persons whatsoever had any title to or interest in said asphalt, or any right to the possession of the same, or any part thereof, except complainant."

If that allegation be true, it is difficult to state a more complete defense by appellee to appellant's replevin suit.

Indeed, it is not claimed that whatever defense the appellee has to the replevin suit can not be made at law, and that being so, we find nothing in the bill that requires us to apply anything but the general rule.

In Long v. Barker, 85 Ill. 431, it was held that every question raised as to the title to the chattels involved could have been proved and settled in the replevin suit as well as in chancery, notwithstanding the allegations in the bill of facts showing that if complainant were deprived of the possession

of the chattel he would sustain irreparable loss, and it was decided the bill would not lie.

To the same effect is Hamilton v. Stewart, 59 Ill. 330, where it was further held, that because a party was insolvent was no ground for depriving him of the right to employ the process of the law to try the title to property which he believes belongs to him.

The argument pressed upon us, that the bill does not seek to enjoin the replevin suit, but only the taking of the property by virtue of the writ in that suit, and that the appellants have an ample remedy upon the injunction bond, while on the other hand, if the property is taken from the appellee, its contract can not be performed, and it will have only a remedy upon the replevin bond, can not be allowed to prevail unless we are prepared to nullify the replevin statute.

The remedy is for the legislature to provide for something in the nature of a forthcoming bond, and not for the courts. The appellee having an unobstructed defense at law to the replevin suit, and it not being made to appear by the bill that there is any defense which may not as well be asserted in the suit at law as in chancery, we think the order of injunction appealed from must be reversed.